[Cite as *Burgess v. Mt. Vernon Developmental Ctr.*, 2009-Ohio-7017.]

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

MARTHA BURGESS, Admx.

     Plaintiff

     v.

MT. VERNON DEVELOPMENTAL CENTER

     Defendant

Case No. 2008-03441

Judge J. Craig Wright

DECISION

**{¶ 1}** Plaintiff Martha Burgess, administratrix of the estate of her daughter, Susan, brings this action alleging wrongful death. The issues of liability and damages were bifurcated and the case proceeded to trial on the issue of liability.

**{¶ 2}** From 1982 until her death in 2006, Susan Burgess was a resident of defendant, Mount Vernon Developmental Center (MVDC), a residential treatment facility for developmentally disabled individuals. Susan suffered from multiple ailments, including mental retardation, autism, episodic sinusitis, rhinitis, anemia, and end-stage renal failure. From 2000 to 2006, Dr. Joseph Poole II, was Susan's primary care physician at MVDC.[1] Dr. Poole worked with a nephrologist in Columbus, Ohio, to manage Susan's chronic renal failure. Susan was extremely self-abusive and, as a result, in 2005 it was determined that she would not be a candidate for dialysis.

**{¶ 3}** On March 13, 2006, Susan's blood oxygen saturation level was measured at 99 percent. On March 17, it had decreased to 93 percent. On March 18, it was 90 percent. On March 19, it returned to 93 percent. On March 20, it varied from 92 to 89 percent. From March 13 to March 20, it was noted that Susan had a runny nose and congestion that cleared with coughing. However, Susan did not have a fever and did not display tachycardia. On March 21, 2006, Susan died. An autopsy was conducted and the cause of death was determined to be bilateral organizing pneumonia.

**{¶ 4}** Plaintiff asserts that the care provided to Susan by defendant's employees fell below the standard of care in that they failed to recognize that Susan was suffering from pneumonia, failed to send her for a chest x-ray, and failed to prescribe antibiotics for her. Defendant asserts that although the cause of death was determined to be pneumonia, it was of sudden onset and that defendant's employees met the standard of

---

[1] The court notes that both Dr. Poole I and Dr. Poole II are employed by MVDC.

care in their treatment of Susan. In addition, defendant asserts that the cause of Susan's death was end-stage renal failure.

{¶ 5} Plaintiff's expert, Michael Yaffe, M.D., testified that he practices internal medicine at the McConnell Heart Health Center at Riverside Methodist Hospital in Columbus, Ohio. Dr. Yaffe stated that Susan's medical records reveal that the decrease in her oxygen level was caused by an upper respiratory infection which traveled to her lower chest and resulted in pneumonia. He criticized the failure of defendant's staff to have Susan tested for pneumonia. He stated that at 8:20 p.m. on March 20, slight congestion was identified in Susan's lungs and that the medical staff should have suspected pneumonia at that time. Dr. Yaffe opined to a reasonable degree of medical probability that if Susan had been sent to the emergency room for a chest x-ray her pneumonia would have been properly diagnosed and that had she been prescribed antibiotics on the evening of March 20, she would have survived. Although Dr. Yaffe believed that Susan displayed features of a type of pneumonia that would have been treatable with antibiotics, he conceded that she did not display other symptoms of pneumonia such as an elevated temperature and tachycardia.

{¶ 6} Dr. Poole testified that he was an internist with a sub-specialty in cardiology. Dr. Poole stated that he became Susan's primary care physician in 2000 and that she had been diagnosed with chronic renal failure in 1998 or 1999. Dr. Poole explained that he was working with Dr. Wilmer, a nephrologist, to treat Susan's renal failure and that he faxed Dr. Wilmer results of lab work approximately once every two weeks. Dr. Poole stated that when he listened to Susan's lungs on March 20, he did not detect any congestion. Dr. Poole testified that he did not suspect that Susan had pneumonia on March 20, and that she complained of back pain, abdominal pain, and headaches, and that she wanted to lie down on the floor.

{¶ 7} On cross-examination, Dr. Poole stated that Susan was given a heightened level of care in March 2006 because of her chronic renal failure and that, in his experience, patients with pneumonia also display an elevated temperature, but she did not. Dr. Poole insisted that when he examined Susan, she showed no signs of pneumonia, but he also stated that she did have stage-5 renal failure, which means that she did not have enough kidney function to sustain life. He explained that she was not

a candidate for dialysis because she was too self-abusive, and that if a shunt were to be placed, she posed a great risk of pulling it out. According to Dr. Poole, Susan was self-abusive to the point that she "was almost ripping her ears off."

{¶ 8} Defendant's expert, Carl Blond, M.D., testified that he is board-certified in internal medicine and nephrology and that he is licensed to practice medicine in the state of Texas. Dr. Blond is employed as a clinical professor of medicine at the University of Texas Health Science Center in San Antonio and works at the San Antonio Kidney Disease Center Physicians Group. Dr. Blond testified that Susan's medical records show that she suffered from progressive kidney failure during her residency at MVDC and that she was in stage 5, the final stage, of progressive kidney failure when she died. Dr. Blond stated that at the time of her death, Susan had been in stage-5 kidney failure for approximately one year. Dr. Blond stated that the description in her autopsy showed that her kidneys were "completely gone"; that she had one-tenth of a millimeter of cortex on her kidneys, which he described as "essentially nothing; just a scar around the outside of her kidneys." Dr. Blond explained that in a normal kidney, the cortex measures 1.5 centimeters.

{¶ 9} Regarding the care that Susan received in the week before her death, Dr. Blond stated that defendant's employees seemed to be very attentive to her inasmuch as they frequently checked on her, monitored her vital signs, and that they called Dr. Poole multiple times regarding her status. Dr. Blond stated that he did not observe any deviation from the medical staff's standard of care for Susan, and that nothing in the medical records showed that she was in "dire straits." Dr. Blond noted that Susan did not have a fever or tachycardia, which are typical signs of pneumonia.

{¶ 10} Dr. Blond explained that at 8:20 p.m. on March 20, Susan's oxygen level was between 92 and 89 percent, and although that level was not normal, it was not a drastic change from what it had been earlier in the week. In addition, her pulse was consistently normal. Dr. Blond stated that it would have been reasonable for Dr. Poole to plan to evaluate Susan in the morning on March 21, to see if there was any evidence of infection; and that she did not appear to be in need of urgent treatment at 8:20 p.m. on March 20.

{¶ 11} Dr. Blond opined that, to a reasonable degree of medical probability, defendant's employees met the standard of care in their treatment of Susan inasmuch as they were attentive to her, they checked on her frequently, and they updated Dr. Poole about her status. Dr. Blond further opined that Susan died from complications of end-stage kidney failure, that defendant's medical staff did not do anything to cause or contribute to her death, and that her death was natural and expected. Dr. Blond added that infection is frequently the cause of death where kidney failure is treated conservatively.

{¶ 12} Lastly, Dr. Blond opined that even if Susan had been taken to the emergency room on March 20, more likely than not she would not have survived because of her kidney failure.

{¶ 13} "In order to establish medical malpractice, it must be shown by a preponderance of the evidence that the injury complained of was caused by the doing of some particular thing or things that a physician or surgeon of ordinary skill, care and diligence would not have done under like or similar conditions or circumstances, or by the failure or omission to do some particular thing or things that such a physician or surgeon would have done under like or similar conditions and circumstances, and that the injury complained of was the direct result of such doing or failing to do some one or more of such particular things." *Bruni v. Tatsumi* (1976), 46 Ohio St.2d 127, 131.

{¶ 14} Upon review of the evidence, the court finds that plaintiff has failed to prove by a preponderance of the evidence that defendant's medical staff deviated from the standard of care. The court notes that Susan's oxygen saturation levels were monitored with regularity and that she was given continuous medical care during the final stages of her life. The court also finds that throughout her treatment, Susan did not display the classic signs of pneumonia: fever and tachycardia. Dr. Blond's testimony persuaded the court that the condition of Susan's kidneys was incompatible with life. The greater weight of the evidence shows that Susan's death was the result of stage-5 kidney failure and that, even if her pneumonia had been diagnosed, the failure of her kidneys was imminent. For the foregoing reasons, the court finds that plaintiff has failed to prove any of her claims by a preponderance of the evidence and, accordingly, judgment shall be rendered in favor of defendant.

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

MARTHA BURGESS, Admx.

    Plaintiff

    v.

MT. VERNON DEVELOPMENTAL CENTER

    Defendant

Case No. 2008-03441

Judge J. Craig Wright

<u>JUDGMENT ENTRY</u>


This case was tried to the court on the issue of liability. The court has considered the evidence and, for the reasons set forth in the decision filed concurrently herewith, judgment is rendered in favor of defendant. Court costs are assessed against plaintiff. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.


_____
J. CRAIG WRIGHT
Judge

cc:

Christopher P. Conomy                    Curtis M. Fifner
Eric A. Walker                           Mark E. Defossez
Assistant Attorneys General              495 South High Street, Suite 100
150 East Gay Street, 18th Floor          Columbus, Ohio 43215
Columbus, Ohio 43215-3130

HTS/cmd
Filed November 5, 2009
To S.C. reporter December 29, 2009